# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

02 APR 30  PM 4:08

| | |
|---|---|
| **CHRISTOPHER COE,** ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | CV-01-N-1476-S |
| ] | |
| **LEISURE ENTERTAINMENT, INC.,** ] | |
| ] | ENTERED |
| Defendant. ] | MAY 0 1 2002 |

## MEMORANDUM

### I.   Introduction.

This case involves a claim for retaliation brought pursuant to Title VII of the Civil Rights Act of 1964. Presently before the court is defendant Leisure Entertainment, Inc.'s ("Leisure's") motion for summary judgment, filed January 30, 2002. [Doc. # 29.] The issues have been briefed by both parties and are ripe for determination. Upon due consideration, the court finds that the motion is due to be granted.

### II.   Facts.[1]

Defendant Leisure is a Blockbuster Entertainment franchisee that operates a chain of stores in Alabama and Mississippi. Plaintiff Christopher Coe was hired as Leisure's Director of Loss Prevention in August, 1997. Brooke Collins, a personal friend of Coe's, was a Marketing Manager at Leisure. Kirk Grantham is a District Manager at Leisure, overseeing several stores in Mississippi. Collins, who is not a party to this lawsuit, has

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



alleged that, on one occasion, she and Grantham kissed while he was visiting her apartment, and that, on a second occasion, Grantham asked her for sex and otherwise made her feel uncomfortable while visiting her apartment. Glenn Klicker, Vice President of Operations of Leisure, was Coe's supervisor and the decision maker who terminated Coe's employment with Leisure.

Coe and Collins saw each other every day at work, frequently went to lunch together, and also saw each other outside work. In October, 1999, Collins had dinner with Coe and his wife at a local restaurant. During dinner, Collins told Coe and his wife that Grantham had made her feel uncomfortable by "coming on to her" at her apartment. Collins wanted Coe to say something to Grantham, and asked him to "be mean" to Grantham at the upcoming manager's conference at Lake Guntersville. Collins admits that she did not report Grantham's alleged actions to Julie Wade, her supervisor, because Wade would have "made a big deal out of it" and "blow it out of proportion," which was precisely what Collins did not want.

On the evening of October 19, 1999, at the manager's conference at Lake Guntersville, a crowd of people, including Coe and Grantham, gathered in a large room to watch a baseball game on television. Coe took Grantham aside, away from the crowd, and cautioned him that "he had put himself in a situation with Brooke that made her feel uncomfortable and that it needed to stop." Coe testified that he talked to Grantham from the standpoint of Grantham's own personal welfare. Coe told Grantham he did not want Grantham to put himself in a situation where he could be accused of inappropriate conduct in the future. After Coe confronted him, Grantham told Tony Swift, another District Manager,

2

about the conversation with Coe. Collins testified that Grantham called her that evening and was mad that she had said something to Coe. Coe also spoke with Collins on the telephone that evening and told her that he had taken care of the matter. The next morning, Coe left the manager's retreat, while several others, including Klicker, remained behind for continued meetings.

On October 25, 1999, Coe's supervisor, Klicker, terminated Coe's employment with Leisure, telling him that he could not trust him in the future. Leisure alleges that the basis of Klicker's decision to fire Coe was the fact that on the day that Coe left the manager's meeting in Guntersville, he spent the day with his mother and daughter rather than at work.[2] Leisure further asserts that Klicker did not learn of Coe's conversation with Grantham until after Klicker had terminated Coe. In fact, Klicker testified that the first time he learned of Coe's conversation with Grantham was when Grantham called him on October 26, 1999, the day after Klicker had fired Coe, and told him that there were rumors about inappropriate behavior and that Collins had made allegations toward him. Coe acknowledges that prior to his termination, he only talked with Collins and Grantham about the alleged harassment.

On the same day that Klicker fired Coe, Collins was called into the office of her supervisor, Julie Wade, who disciplined her for having brought her dog to work while the managers were attending the retreat in Guntersville, Alabama. Wade told her that she could not trust her and that she did not have a future with the company. Although she was only disciplined and not fired, Collins decided to resign. In her deposition, she testified that

---

[2] The court does not address the dispute regarding the alleged basis of Coe's termination because, as discussed below, Coe is unable to present even a prima facie case of retaliation.

while Wade did not tell her that she was going to be terminated if she did not resign, Wade's statement that she did not have a future with the company and that it was up to her to decide what to do gave her the impression that if she did not resign, she would be terminated.[3]

## III.  Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by

---

[3] Leisure submitted a response to the EEOC regarding Coe's charge of discrimination in which it contended that Collins decided to resign after being informed of Julie Wade's intention to recommend her for termination. This is the only evidence that Wade expressed an intention to Collins to terminate her employment, and is not supported by Collins' own testimony.

4

the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV. Discussion.**

The *McDonnell Douglas/Burdine* burden-shifting framework established by the United States Supreme Court is applicable to claims for retaliation in violation of Title VII. *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 511 n.10 (11th

5

Cir. 2000); see *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Accordingly, a plaintiff must initially establish a prima facie case of retaliation by demonstrating that: (1) he was engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. . . . The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citations omitted).

In the present case, Leisure argues that Coe was not engaged in a protected activity and that, even if he was, there is no causal connection between such activity and the termination of his employment. Leisure further argues that even if Coe were able to establish a prima facie case of retaliation, he cannot demonstrate that the reason that Leisure gave in support of his termination is merely a pretext for retaliation. Coe replies that his act of talking to Grantham was a protected activity, that there is a causal connection between that act and the termination of his employment, and that there is evidence that the reason given by Leisure for his termination was a pretext for retaliation. Because the court agrees with Leisure that there is no evidence of a causal connection between the discussion that Coe had with Grantham and the subsequent termination of his employment, the court does not reach the other issues raised by the parties.

The Eleventh Circuit has made clear that in order to find a causal connection between the protected activity and the adverse employment action, there must be some showing that the decision-maker knew of the plaintiff's engaging in a protected activity prior to taking the adverse employment action. *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). In *Clover*, the court stated:

> To establish [a] causal connection, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated. . . . At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence.

*Clover*, 176 F.3d at 1354 (internal quotations and citations omitted). *See also Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (wherein the court specifically set out the decision-maker's knowledge of the protected activity as a separate element of the plaintiff's prima facie case). In *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999), the court said, "We have plainly held that a plaintiff satisfies [the causation element] if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley*, 197 F.3d at 1337.

Coe argues that he has satisfied the causal connection element by demonstrating three things: (1) there was a close temporal proximity between his engaging in the protected activity and his employment being terminated; (2) all management employees were present at the company retreat at Lake Guntersville, Alabama, when he pulled Grantham aside and confronted him; and (3) Collins was disciplined at the same time that

he was fired. Even accepting all of the foregoing as true, Coe has not demonstrated sufficient evidence upon which a reasonable jury could find a causal connection.

The Eleventh Circuit has clearly stated that temporal proximity alone does not suffice to show a causal connection when there is undisputed evidence that the decision-maker did not know of the protected activity. *See Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (*citing Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1355-56 (11th Cir. 1999)). In this case, Klicker, the decision-maker, unequivocally denied knowing of Coe's allegedly protected activity, the confrontation with Grantham, until a day after he fired him.

Attempting to show that Klicker did, in fact, have knowledge of his protected activity, Coe notes that all of Leisure's management was present at the company retreat. Coe, of course, is implying that Grantham or someone else with knowledge of the confrontation spoke with Klicker during the retreat and informed him of it. This evidence falls far short of what is necessary to raise an issue of fact as to knowledge in the face of an unequivocal denial. The Eleventh Circuit dealt with a similar situation in *Clover v. Total System Services, Inc.*, 176 F.3d 1346 (11th Cir. 1999).[4] In that case, there was evidence that an individual with knowledge of the plaintiff's protected activities spoke with the decision-maker just prior to his decision to fire the plaintiff. *Clover*, 176 F.3d at 1354-55. Finding this evidence insufficient to create a question of fact as to whether that individual actually told

---

[4] Although *Clover* involved judgment as a matter of law and the present case is before the court on summary judgment, both the United States Supreme Court and the Eleventh Circuit have clearly held that the standard for granting summary judgment is identical to the standard for judgment as a matter of law, such that the court undertakes identical inquiries under each. *See Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2110 (2000); *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 n.6 (11th Cir. 2000); *Chapman v. AI Transport*, 229 F. 3d 1012, 1025 n.11 (11th Cir. 2000).

the decision-maker of the plaintiff's involvement in a protected activity, the court said:

> The evidence that [the decision-maker] and [the individual with knowledge] spoke in the time period between [the plaintiff's] participation in the investigation and [the decision-maker's] decision to terminate her shows, at most, that [the individual with knowledge] could conceivably have told [the decision-maker] about [the plaintiff's] participation. But because "could have told" is not the same as "did tell," it would be pure speculation to infer that [the individual with knowledge] actually told [the decision-maker] about [the plaintiff's] participation. The fact that the vice-president who heads a corporate division and the vice-president in charge of Human Resources talk regularly is not surprising, nor is it enough to support a reasonable inference that they discussed a specific topic, much less an inference concerning what they said about it.

*Clover*, 176 F.3d at 1355.

As in *Clover*, it is not surprising that, at a company retreat, Klicker, a vice president, would talk to other company managers. The fact that they would talk, however, does not demonstrate that anyone with knowledge of the confrontation actually told Klicker about the confrontation. Any such implication would merely be speculation on the part of the fact-finder and would, therefore, not support a finding that Klicker had actual knowledge of the protected activity here at issue.

The fact that Collins was disciplined at the same time that Coe was fired likewise does not demonstrate knowledge on the part of Klicker. For one thing, Collins was not fired, but was disciplined and decided to resign. Moreover, Collins fully admitted in her deposition that her supervisor's reaction to her bringing her dog to work was justified:

> Q. Do you think that [your supervisor] was justified in calling you into her office and talking to you about this?
> A. Talking to me about bringing [my dog] to work?
> Q. Yes. I'm sorry.
> A. Yes.
> Q. Do you think she was justified in being upset?

9

```
A.   Yes.
Q.   And disappointed?
A.   Yes.
Q.   Do you remember what you told her?
A.   I told her I was sorry.
Q.   But [your supervisor] did not fire you; right?
A.   No.
Q.   It was your decision to resign?
A.   Yes.
```

Collins Dep. at 40-41. To argue that the timing of Collins' discipline and Coe's termination are anything more than coincidental would, as with Coe's previous argument, be an exercise in speculation. The fact of the timing clearly does not create a jury question on whether Coe's confrontation with Grantham led to his termination.

The only case binding upon this court that Coe cites in favor of his argument on the issue of causal connection is *Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993), in which the Eleventh Circuit appeared to hold that temporal proximity alone is sufficient to support causation. In *Goldsmith*, the plaintiff was transferred by the mayor of a town after she informed a city council member that she was going to file an EEOC complaint. *Goldsmith*, 996 F.2d at 1157. The evidence in that case showed that the mayor transferred the plaintiff shortly after meeting with the council member. *Id.* While the court focused on the temporal proximity between the plaintiff's protected activity and her subsequent transfer, the court was careful to point out that although the mayor claimed at trial that he had no knowledge of the plaintiff's protected activity, his testimony was impeached by a portion of his deposition in which he apparently stated that he and the council member may have discussed the plaintiff's statement that she was going to file an EEOC charge at their meeting. *Id.* at 1163 n.12. The court in *Clover* pointed out the distinction in that case and

10

one where, like the present, there is no evidence that the decision-maker knew of the protected activity prior to taking the adverse employment action and concluded that *Goldsmith* provides no support for the finding of a causal connection in such cases. *Clover*, 176 F.3d at 1355-56.

**V.    Conclusion.**

Because the plaintiff is unable to establish a causal connection between the allegedly protected activity in which he engages and the subsequent termination of his employment, he has not presented a prima facie case of retaliation in violation of Title VII. As a result, the defendant's motion for summary judgment is due to be granted and this action will be dismissed. A separate order will be entered contemporaneously with this memorandum of opinion.

Done, this 30th of April, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE